1

F. # 2013R000072

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – X

UNITED STATES OF AMERICA

    - against -                    16-CR-00154-GAR

MICHAEL STERN,

          Defendant.

– – – – – – – – – – – – X

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

### INTRODUCTION

The United States of America, by and through the undersigned attorneys, hereby submits this sentencing memorandum regarding defendant Michael Stern. On May 4, 2016, before the Honorable Nicholas Garaufis, District Judge for the U.S. District Court for the Eastern District of New York, defendant Michael Stern pled guilty to a two-count information, charging him with falsely subscribing tax returns for the calendar years 2006 and 2007, in violation of Title 26, United States Code, Section 7206(1). Based on the factors set forth in 18 U.S.C. § 3553(a), and the U.S. Sentencing Guidelines, the government requests that the Court sentence the defendant to a term of incarceration within the guidelines range of 12 to 18 months. Additionally, the parties agreed to a restitution order in the amount of $190,781, to be paid the Internal Revenue Service (IRS).

## FACTUAL BACKGROUND

Michael Stern ("Stern") founded, operated, and incorporated Prestige Optical ("Prestige"), an eyeglass retailer. Prestige, which elected treatment as an S Corporation,[1] had an online sale's platform and stores in Brooklyn, New York. Customers who purchased glasses and sunglasses online paid for their purchases either by sending Stern a check or by submitting payment through Pay Pal. Stern then directed payments received by Pay Pal either to his personal bank account or to his corporate bank account.

Stern provided only his corporate bank records to his mother, Anna Stern, for the preparation of Prestige's books and records—deliberately omitting disclosure of his personal accounts showing substantial additional income deposited. These records in turn were provided to Stern's accountant, Martha Cohen, for the preparation of Prestige's Forms 1120S for the tax years 2006 and 2007. Anna Stern then used the Forms 1120S to create Stern's personal tax returns.

Stern, by his own admission, oversaw the preparation of his corporate and personal tax returns, and signed his personal tax returns attesting to their accuracy. The returns, however, as Stern knew, were not accurate. To the contrary, Stern deliberately omitted from his returns the reporting of substantial additional income.

As discussed above, because Prestige elected S Corporation status, Stern's corporate income flowed through to his personal tax return. The failure to report substantial sums of corporate income accordingly affected both Prestige's Forms 1120S for tax years 2006 and 2007, as well as Stern's personal tax returns for those same years. The government has calculated the unreported gross receipts and unreported taxable income as follows:

---

[1] Because Prestige was an S corporation, its shareholders were required to report flow-through corporate income and losses on their personal tax returns.

| Summary Chart | | | |
|---|---|---|---|
| | **2006** | **2007** | **TOTAL** |
| Gross Receipts Per Filed Forms 1120S | $435,450 | $945,819 | $1,381,269 |
| *Unreported Gross Receipts* | $968,973.90 | $853,980.32 | $1,822,954.22 |
| Taxable Income Per Filed Forms 1040 | $144,267 | ($20,071)) | $124,196 |
| *Corrected Taxable Income* | $616,018.65 | $190,437.98 | $806,456.63 |
| Tax Due Per Filed Forms 1040 | ($17,125) | ($4,566) | ($21,691) |
| *Corrected Tax Due* | $162,778 | $46,694 | $209,472 |
| ***Additional Tax Due and Owing*** | **$145,653** | **$45,128** | **$190,781** |

As this summary chart reveals, Stern failed to report approximately $1.8 million in gross receipts for 2006 and 2007.

## DISCUSSION

### I.   United States Sentencing Guidelines

Even though the U.S. Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *see also United States v. Stewart*, 590 F.3d 93, 166–67 (2d Cir. 2009) (stating that procedural steps prescribed by law includes correct calculation of Guidelines range). In this case, the government submits that the total offense level is as follows:

Base Offense Level (based on Tax Loss of $190,781):      16
    *See* U.S.S.G. §§2T1.1, 2T4.1(G)

Acceptance of Responsibility Reduction:                  -3
    *See* U.S.S.G. §3E1.1(a)

Total Offense Level:                                     13

With a Level 13 offense level and a Category 1 criminal history, the defendant's Sentencing Guidelines range is 12-18 months of imprisonment. This is consistent with the Probation Office's Pre-Sentence Investigation Report ("PSR") which calculated the defendant's Sentencing Guidelines range in the same manner. PSR ¶ 59.

**II.     Other 18 U.S.C. § 3553(a) Sentencing Factors**

In addition to the U.S. Sentencing Guidelines, the Court must consider the other factors set forth in 18 U.S.C. § 3553(a). A sentence within the range advised by the Sentencing Guidelines in this case appropriately considers the nature and circumstances of the offense; reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense; affords adequate deterrence; is consistent with the Sentencing Commission's policy statements on the need for deterrence in tax crimes; and is no greater than necessary for these purposes. 18 U.S.C. § 3553(a)(1), (2), (5), (6). As such, this Court should sentence the defendant to a term of imprisonment within the Guidelines range of 12-18 months.

Focusing first on the nature and circumstances of the offense, the defendant took deliberate and willful steps to defraud the United States. He purposefully deposited checks and transfers from PayPal into his personal bank account and withheld that bank account information from his bookkeeper and accountant. When initially confronted by the IRS in January 2010, Stern claimed that he was "no good" with taxes and that his wife was the owner of the eyeglass shop. Later in December 2010, Stern, accompanied by counsel, again spoke with IRS Special Agents. In that interview, Stern claimed that he was ignorant of proper bookkeeping and that the profit from the store was not that large. Stern then acknowledged, "I made a big mistake. I did not report the income and expenses from my personal accounts," and expressed a desire to file amended tax returns.

Stern's characterization of his fraudulent returns and underpayment as a simple mistake is at odds with the record. In 2006 and 2007, Stern underreported $682,260 in income and $1.8 million in gross receipts. Put differently, he only reported only 18% of his actual income and

43% of his total gross receipts for 2006 and 2007. On top of this, he paid only 10% of the taxes that he owed.

This was not a mistake by omission or a rounding error or the byproduct of accounting ignorance. Stern is a successful businessman who made hundreds of thousands of dollars in his eyeglass venture and is currently making hundreds of thousands of dollars from real estate and his beauty supply business. It is not just Stern's business savvy, however, which reveals the purposeful nature of his conduct. It is also the mechanics by which he hid his income. Stern deposited the majority of income into his personal bank account and then concealed those records from his bookkeeper and accountant. This conduct and the substantial tax loss that it caused warrants a guideline sentences.

The need to promote respect for the rule of law also warrants a term of incarceration. The offenses committed by the defendant were not predicated on a singular lapse in judgment; rather, they are the result of a deliberate course of criminal conduct that spanned over two years. The defendant's willful submission of false tax returns indicate that a guidelines' sentence is appropriate.

In addition to the need for specific deterrence, the need for general deterrence similarly warrants a guidelines' prison sentence. The U.S. system of tax collection relies heavily on individual tax payers accurately reporting their taxable income. This reality is reflected by a comparison of the number of returns that the IRS processes on a yearly basis with the number of investigative employees. In 2015, according to the Internal Revenue Service Data Book, the IRS processed 243 million tax returns and employed approximately 25,000 personnel nationwide as revenue agents, tax examiners, revenue officers, and special agents. *See* 2015 IRS Data Book, p.

iii, at 68 https://www.irs.gov/pub/irs-soi/15databk.pdf. This equates to 9,517 returns per investigative employee. The Sentencing Guidelines recognize this dynamic:

> Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

U.S.S.G. ch. 2, pt. T, introductory cmt.

Ultimately, small-business tax fraud, like the one perpetrated by the Stern, undermines the trust that is essential to the proper functioning of our revenue laws and the integrity of our tax system. This case both exemplifies the powerful need to deter similar tax frauds, and presents the court with an opportunity to do so. Absent such deterrence, other tax payers will cynically conclude that the risks of being caught and punished for tax fraud do not outweigh the potential rewards. Deterrence is, thus, critical not only to ensure that a particular individual pays the taxes that the individual owes, but also to ensure that others continue to be honest taxpayers.

The need to avoid unwarranted sentence disparities also weigh in favor of imposing a sentence within the advisory guidelines range. The criminal tax provisions of the U.S. Sentencing Guidelines were established explicitly in part "to reduce disparity in sentencing for tax offenses." U.S.S.G. §2T1.1 cmt. background; *see also* 28 U.S.C. § 991(b)(1)(B) (purposes of U.S. Sentencing Guidelines). As the Supreme Court has noted, "[f]or even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in *Rita*, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall v. United States*, 552 U.S. 38, 46 (2007) (citing *Rita v. United States,* 551 U.S. 338,349 (2007). Respect for the guidelines and the underlying congressional goal of continuity of sentence also point to a guidelines sentence.

In terms of the factors that may warrant a sentence outside of the advisory guidelines' range, the Presentence Report notes, "[t]he defendant is a small business owner with 6 employees. [Ms. Stern] has stated that the business is unable to operate without the defendant and if he were incarcerated, the employment status of the employees could be in jeopardy." PSR ¶ 74. While the government has no desire to shutter an on-going business or to put Mr. Stern's employees out of work, there is reason to question whether this worst case scenario will come to pass. First, Ms. Stern is not an uninterested party with respect to her husband's sentence. Additionally, nearly five months will have passed from Mr. Stern's guilty plea to his sentencing. This is time that may have been (or should have been) used to train or find a replacement for Mr. Stern. Moreover, given the Stern's positive cash flow (estimated by the PSR to be approximately $9,700/month) and the Stern's total net worth (estimated by the PSR as being approximately $1.8 million), the Sterns have the resources to hire a temporary manager if they choose.

Even if this were not the case, however, successful businessmen should not be able to avoid prison because of the possibility that it could affect their employees' jobs. The risk of imprisonment and that their business will be harmed is one that businessmen and women take when they willfully choose to not pay their taxes. A decision to the contrary would lend itself to sentencing disparities, depending upon the number of employees that the taxpayer has, and creates a devil's bargain for the court: less jail time for a defendant or run the risk that the employees lose their jobs. The court should reject such a bargain.

III.     **Conclusion**

The United States relies upon the honesty of taxpayers to fund its functions. The defendant made a deliberate choice to take advantage of the federal tax system for personal profit at the expense of the United States and other honest taxpayers. He stole nearly $200,000 from the United States. This is a serious crime that deserves a serious sentence. For the aforementioned reasons, the Government recommends that this Court sentence Defendant Michael Stern to a term of imprisonment within the applicable Sentencing Guidelines range of 12-18 months. Such a sentence is appropriate in this case and consistent with the U.S. Sentencing Guidelines and the factors enumerated in 18 U.S.C. § 3553(a). The government further requests that the Court enter an order of restitution in the amount of $190,781. *See* 18 U.S.C. § 3663(a)(3).

Dated:          October 13, 2016

                              ROBERT L. CAPERS
                              United States Attorney
                              Eastern District of New York

                              CAROLINE D. CIRAOLO
                              Acting Assistant Attorney General
                              U.S. Department of Justice Tax Division


                    By:      _____/s/_____
                              Jack Morgan
                              Trial Attorney, Tax Division
                              U.S. Department of Justice

                              Mark Kotila
                              Trial Attorney, Tax Division
                              U.S. Department of Justice